KROGER, Appellant,

v.

Japheth LIGON; Honorable Chris Davis, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Japheth Ligon, Cross–Appellant,

v.

Kroger; Honorable Chris Davis, Administrative Law Judge; and Workers' Compensation Board, Cross–Appellees.

Nos. 2010–SC–000385–WC, 2010–SC–000403–WC.

Supreme Court of Kentucky.

May 19, 2011.

Joel Walter Aubrey, Pohl, Kiser & Aubrey, PSC, Louisville, KY, Counsel for Appellant/Cross–Appellee, Kroger.

Donald D. Zuccarello, Nashville, TN, Counsel for Appellee/Cross–Appellant, Japheth Ligon.

## OPINION OF THE COURT

The Court of Appeals affirmed the decision in which the Workers' Compensation Board held that the Administrative Law Judge (ALJ) erred by denying future medical benefits for the claimant's work-related injury but that the evidence did not compel an award of permanent income benefits.

Appealing, the employer asserts that the Board should not have disturbed the decision to deny future medical benefits because it was supported by substantial evidence under a correct interpretation of the law. The claimant asserts in a cross-appeal that the evidence compelled the ALJ to find that his injury produced a permanent impairment rating and entitled him to permanent income benefits. We affirm for the reasons stated herein.

The claimant was born in 1978 and earned a GED certificate. He injured his right shoulder on September 21, 2006, when lifting a seventy-pound box of chicken in the course of his work for the defendant-employer. He notified his supervisor immediately and was sent for medical treatment.

In November 2006 the claimant became a patient of Dr. Grossfeld, an orthopedic surgeon, who diagnosed a labral tear in the right shoulder based on an MRI scan. On February 14, 2007 she performed arthroscopic shoulder surgery in which she debrided an undersurface rotator cuff tear and performed a type 2 superior labral repair. She released the claimant to left-handed duty on May 22, 2007 and anticipated that he would reach maximum medical improvement (MMI) at five months post surgery.

On May 23, 2007 Kroger directed the claimant to seek treatment from Dr. Bonnarens, also an orthopedic surgeon. He ordered x-rays, which revealed two metallic anchors that were consistent with a previous "SLAP" (superior labrum tear from anterior to posterior) injury repair. He also ordered an MR arthrogram, which revealed no evidence of a recurrent tear. Dr. Bonnarens noted that the claimant exhibited marked limitations in internal rotation of the shoulder and recommended additional physical therapy. He examined the claimant on July 11, 2007 and released him to return to regular duty with the understanding that he would probably be sore at the end of the day. At the final visit on August 29, 2007 Dr. Bonnarens noted some continued tightness with glenohumeral internal rotation; recommended continued stretching with a home exercise program; and considered the claimant to be at MMI. A February 19, 2008 letter from Dr. Bonnarens noted that the claimant had canceled a recent appointment. He assigned a 0% impairment rating under the Fifth Edition of the *Guides to the Evaluation of Permanent Impairment (Guides)*, noting that the claimant had a full range of motion, no abnormal ligamentous laxity, and normal strength. The letter did not address the reasonableness or necessity of future medical treatment.

On February 4, 2008 the claimant sought treatment in Tennessee with Dr. Dovan, an orthopedic surgeon. Dr. Dovan noted complaints of right shoulder pain and stiffness and injected the shoulder after finding "some subtle instability" in the shoulder on physical examination. He noted on April 8, 2008 that the claimant failed to keep his appointment and that the recent functional capacity evaluation was invalid due to his failure to put forth maximal effort. Dr. Dovan concluded that the claimant was at MMI; assigned a 1.5% impairment rating based on the right shoulder; and released him to full duty with no restrictions. Responding to questionnaires on December 2, 2008, he stated

that he did not think further medical treatment was needed and that the claimant reached MMI on May 30, 2007.

Dr. Fishbein, an orthopedic surgeon, evaluated the claimant in July 2008. He assigned an 8% impairment rating based on the right shoulder and stated that the injury would require medical care for the indefinite future. He testified when deposed that the work-related injury caused a SLAP tear to the right shoulder, which he characterized as being extensive, difficult to repair, and easy to re-injure. He stated that such an injury leaves some impairment, even in the hands of the best of surgeons, and found it "just incredulous" that Dr. Bonnarens assigned a 0% impairment rating. Dr. Fishbein described the medical treatment the claimant received as being reasonable and necessary and, when asked if he needed any future treatment, responded that he had received "all the treatment he needs at this point."

The claimant failed to return to work when released to do so in July 2007 and was terminated. He obtained work through an employment agency for a period of time beginning in October 2007 and later relocated to Tennessee, where he had a part-time job at a P.F. Chang's restaurant. He testified that he continued to experience pain, tightness, and popping and clicking sensations in his right shoulder.

The ALJ awarded temporary total disability benefits from December 4, 2006 through July 15, 2007, as paid by the employer, but dismissed the claims for permanent income and medical benefits. The ALJ found the evidence to show "overwhelmingly" that the injury produced no permanent impairment rating, viewing the opinions of Drs. Fishbein and Dovan concerning an impairment rating to be inconsistent with their opinions concerning the need for future medical treatment among other things. Moreover, the ALJ viewed the opinions of Drs. Bonnarens, Fishbein, and Dovan as precluding an award of future medical benefits.

## I. STANDARD OF REVIEW.

An injured worker bears the burden of proof and risk of non-persuasion before the ALJ with regard to every element of his claim.[1] KRS 342.285 designates the ALJ as the finder of fact in workers' compensation cases. It permits an appeal to the Board but provides that the ALJ's decision is "conclusive and binding as to all questions of fact" and prohibits the Board or a reviewing court from substituting its judgment for the ALJ's "as to the weight of evidence on questions of fact."[2] As a consequence, the ALJ has the sole discretion to determine the quality, character, and substance of evidence.[3]

An ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof.[4] KRS 342.285(2) and KRS 342.290 limit administrative and judicial review of an ALJ's decision to determining whether the ALJ "acted without or in excess of his powers;"[5] whether the decision "was pro-

1. *See Roark v. Alva Coal Corporation,* 371 S.W.2d 856 (Ky.1963); *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (Ky.App.1984); *Snawder v. Stice,* 576 S.W.2d 276 (Ky.App.1979).

2. *See also* KRS 342.290.

3. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418 (Ky.1985).

4. *Caudill v. Maloney's Discount Stores,* 560 S.W.2d 15, 16 (Ky.1977).

5. KRS 342.285(2)(a).

cured by fraud;"[6] or whether the decision was erroneous as a matter of law.[7] Errors of law would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion.

A party who appeals a finding that favored the party with the burden of proof must show that no substantial evidence supported the finding, *i.e.*, that it was unreasonable under the evidence.[8] A party who fails to meet its burden before the ALJ must show on appeal that the unfavorable finding was clearly erroneous because overwhelming evidence compelled a favorable finding, *i.e.*, that no reasonable person could have failed to be persuaded by the favorable evidence.[9] Evidence that would have supported but not compelled a different decision is an inadequate basis for reversal on appeal.[10]

## II. FUTURE MEDICAL BENEFITS.

The employer takes issue with the Board's conclusion that the evidence compelled an award of future medical benefits under KRS 342.020(1) as construed in *FEI Installation, Inc. v. Williams.*[11] Pointing to what it perceives to be "critical distinctions" between the present case and *Williams*, the employer relies on *Mullins v. Mike Catron Construction/Catron Interior Systems, Inc.*[12] to argue that future medical benefits are permitted but not required when a work-related injury produces a 0% permanent impairment rating. The employer maintains that the Board should not have disturbed the ALJ's decision to deny future medical benefits because substantial medical evidence supported it. The employer also maintains that the Court of Appeals erred by failing to address whether the Board substituted its judgment for the ALJ's, thereby exceeding the scope of its review. We disagree.

KRS 342.020(1) entitles a worker to reasonable and necessary medical treatment "at the time of the injury and thereafter during disability," without regard to the duration of income benefits. *FEI Installation, Inc. v. Williams* concerned whether KRS 342.020(1) entitles a worker who reaches maximum medical improvement with no permanent impairment rating to future medical benefits. The court determined that an injured worker is entitled to future medical benefits for so long as the injury causes impairment as defined on page 2 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment (Guides)*, Fifth Edition. Impairment, as so defined, means "a loss, loss of use, or derangement of any body part, organ system, or organ function."

The *Williams* court explained that the presence of impairment demonstrates a harmful change in the human organism and "disability," regardless of whether the impairment and resulting disability are severe enough to warrant a permanent im-

---

6. KRS 342.285(2)(b).

7. KRS 342.285(2)(c), (d), and (e). *See also American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Commission*, 379 S.W.2d 450, 457 (Ky.1964).

8. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky.1986); *Mosely v. Ford Motor Co.*, 968 S.W.2d 675 (Ky.App.1998); *REO Mechanical v. Barnes*, 691 S.W.2d 224 (Ky.App.1985).

9. *Id.*

10. *McCloud v. Beth–Elkhorn Corp.*, 514 S.W.2d 46 (Ky.1974).

11. 214 S.W.3d 313, 318–19 (Ky.2007).

12. 237 S.W.3d 561, 563 (Ky.App.2007).

pairment rating or permanent income benefits.[13] The *Williams* court acknowledged, however, that an injury may be temporary and warrant only temporary medical benefits.[14] Thus, in *Mullins v. Catron Construction/Catron Interior Systems, Inc.*[15] the court reaffirmed an ALJ's decision to deny future medical benefits to a worker who suffered a temporary exacerbation of his pre-existing condition and failed to show the need for medical treatment after the date he reached MMI. *Mullins* governs a narrow class of cases to which the present case does not belong.

KRS 342.020(1) entitled the claimant to be awarded future medical benefits. He did not sustain a temporary exacerbation of a pre-existing condition, such as occurred in *Mullins*,[16] but a SLAP tear that required surgery and the permanent implantation of hardware in his shoulder. Thus, evidence that he required no medical treatment as of the date he reached MMI or the date that his claim was heard was an improper basis to deny future medical benefits. As in *Williams*, KRS 342.020(1) entitles the claimant to reasonable and necessary medical expenses "during disability," despite a finding that the injury warranted no permanent impairment rating. Likewise, KRS 342.020(1) and KRS 342.125(3) entitle his employer to reopen in order to dispute the compensability of future treatment that is unreasonable, unnecessary, or unrelated to the injury.[17] KRS 342.310(1) permits either party to be sanctioned for prosecuting or defending such a dispute unreasonably.

## III. INCOME BENEFITS.

■ The claimant asserts in his cross-appeal that the ALJ erred by finding that his injury produced no permanent impairment rating. He argues that Dr. Bonnarens assigned the 0% rating in February 2008 based on a physical examination performed in August 2007 and failed to consider the subsequent treatment notes from Dr. Dovan, who recommended a revision of the SLAP tear surgery. He maintains that no reasonable person would fail to conclude that a permanent impairment rating resulted from his injury. He emphasizes that it required surgery and the implantation of two metallic screws in his shoulder; required extensive post-surgical treatment and physical therapy; and resulted in a recommendation that he undergo a surgical revision.

■ Although the evidence would have supported a finding that the claimant's injury produced a permanent impairment rating, we are not convinced that it compelled such a finding. The date that an injured worker reaches MMI and the assessment of a permanent impairment rating under the American Medical Association's *Guides to the Evaluation of Permanent Impairment (Guides)* are medical questions to be answered by the medical experts.[18] Dr. Dovan opined in December 2008 that the claimant reached MMI on May 30, 2007 but stated previously that MMI occurred in February 2008; Dr. Grossfeld anticipated that the claimant would reach MMI at five

**13.** 214 S.W.3d at 318–19.

**14.** *See Robertson v. United Parcel Service*, 64 S.W.3d 284 (Ky.2001).

**15.** 237 S.W.3d 561 (Ky.App.2007).

**16.** 237 S.W.3d at 562.

**17.** *See* 803 KAR 25:012. *Jones v. Newberg*, 890 S.W.2d 284, 285 (Ky.1994); *Mitee Enterprises v. Yates*, 865 S.W.2d 654 (Ky.1993); *National Pizza Co. v. Curry*, 802 S.W.2d 949 (Ky.App.1991).

**18.** *Kentucky River Enterprises, Inc. v. Elkins*, 107 S.W.3d 206 (Ky.2003).

months post-surgery, *i.e.*, in mid-July 2007; Dr. Bonnarens opined that he reached MMI in August 2007. Drs. Dovan and Fishbein opined that the injury warranted a permanent impairment rating under the *Guides;* Dr. Bonnarens opined that it did not.

When confronted with conflicting medical opinions, such as were present in this case, the ALJ may decide whom and what to believe.[19] A different ALJ might have decided the claim differently. The fact remains, however, that the evidence the injury warranted a permanent impairment rating was not so overwhelming as to render the decision that was made unreasonable.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

---

**19.** *Copar, Inc. v. Rogers,* 127 S.W.3d 554, 561 (Ky.2003).